UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN ROY | ) | |
| | ) | |
| Plaintiff, | ) | No. |
| | ) | |
| v. | ) | Jury Demanded |
| | ) | |
| POWER DRY CHICAGO, INC. d/b/a, | ) | |
| CHICAGO WATER AND FIRE RESTORATION, | ) | |
| RYAN KELLY, in his official and individual | ) | |
| capacities and JOHN MONTALBANO in his | ) | |
| official capacities, | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, John Roy ("Plaintiff"), by and through her undersigned counsel, and for a cause of action against Defendants, Power Dry Chicago, Inc. d/b/a Chicago Water and Fire Restoration ("CWAFR"), Ryan Kelly and John Montalbano (collectively, "Defendants") alleges as follows:

### NATURE OF THE CLAIMS

1. This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendant's unlawful employment practices against Plaintiff, including its discriminatory treatment of Plaintiff due to his race and its wrongful termination of Plaintiff's performance due to Plaintiff's race Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over such claims pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the violation of Plaintiff's civil rights under Title VII.

3. Venue is proper in this judicial district under 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in the Northern District of Illinois

## PARTIES

4. Plaintiff John Roy is a 45-year-old male resident of Cook County, Illinois. At all relevant times herein, Plaintiff is and has been a resident of the State of Illinois and met the definition of an "employee" under all applicable statutes and worked for CWAFR.

5. CWAFR is a company providing water damage restoration, sewage extraction, and fire and smoke restoration services in the Chicagoland Area and parts of Indiana and Wisconsin. Defendant employs more than 50 employees. At all relevant times herein, Defendant has met the definition of an "employer" under all applicable statutes.

6. Defendant Ryan Kelly ("Kelly") is the President of CWAFR and resides in the State of Illinois. At all relevant times, Kelly directly participated in the discriminatory and otherwise unlawful employment decisions and actions taken against Plaintiff, and was a "covered employer" and/or an "aider" or "abettor" under all relevant statutes.

7. Defendant John Montalbano ("Montalbano") is the General Manager at CWAFR and resides in the State of Illinois. At all relevant times, Montalbano directly participated in the discriminatory and otherwise unlawful employment decisions and actions taken against Plaintiff, and was a "covered employer" and/or an "aider" or "abettor" under all relevant statutes.

## PROCEDURAL REQUIREMENTS

8. Prior to the filing of this complaint, on or about December 15, 2019, Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") for racial discrimination, satisfying the requirements of 42 U.S.C. §2000e-5(b) and (e).

2

9.  Plaintiff's Charge of Discrimination was timely filed within three hundred (300) days after the alleged unlawful employment practice occurred.

10. Thereafter, on March 10, 2021, the EEOC issued Plaintiff his Notice of Right-to-Sue letter with respect to such Charge.

11. This Complaint has been filed less than ninety (90) days after Plaintiff's receipt of her Notice of Right-to-Sue letter.

## FACTUAL ALLEGATIONS

12. Plaintiff is an African American male and former employee of CWAFR.

13. Plaintiff was employed by CWAFR from April 15, 2019 until November 6, 2019 as an IT Manager.

14. As IT Manager, Plaintiff reported to Defendant Kelly and Defendant Montalbano.

15. During the course of his employment with CWAFR, Plaintiff's position had responsibility for providing information technology support and services to CWAFR's management as well as some graphic design.

16. From the outset of Plaintiff's employment with CWAFR, Plaintiff noticed that he was the only African American front desk employee; however, he did not initially experience racially discriminatory behavior.

17. Plaintiff's ability to perform his job duties were praised by Montalbano and Kelly, who claimed his performance was superior to the predecessor at his position.

18. Nonetheless, the Defendants attitude toward Plaintiff significantly changed on September 26, 2019, became evidently discriminatory due to Plaintiff's race, and concluded in wrongful termination of Plaintiff's employment.

3

## Toy Robotic Arm Incident

19. On or about September 26, 2019, Plaintiff found a box with a toy robotic arm addressed to a fellow employee Blake Valderschmidt ("Valderschmidt").

20. Plaintiff did not find any note attached to the box nor was there any instruction on how it related to his job responsibilities; therefore, after waiting some time, Plaintiff emailed Montalbano inquiring about the toy robotic arm.

21. Montalbano answered Plaintiff that the toy "was given to Blake [Valderschmidt] by Ryan [Kelly]. Can you assemble it?"

22. Plaintiff, however, did not see how it pertained to his job duties and considered it some kind of personal hobby, therefore, he returned the toy to Valderschmidt, who was capable of assembling a toy addressed to him, since reassembling, replacing and disassembling parts of variety of equipment was part of his job duties.

23. Upon returning the toy to Valderschmidt, Plaintiff asked whether he knew anything about the toy, to which he answered with laughter "I have no fucking idea what that is… it's some shit that Ryan [Kelly] bought."

24. Plaintiff did not hear about the toy robotic arm again until October 16, 2019, when Kelly came to Plaintiff and placed the box with the toy robotic arm on Plaintiff's desk and stating "you gotta fix this."

25. Plaintiff explained to Kelly that he inquired with Montalbano and Valderschmidt about how assembling the toy was related to his job responsibilities and did not receive an answer.

26. Kelly informed Plaintiff that the toy's purpose is to "tickle Blake's [Valderschmidt's] asshole."

27. Plaintiff felt uncomfortable with Kelly's comment, which reassured him that assembling the toy was not part of his job duties.

28. Kelly then stated, "**it's not like we're asking you to pick cotton.**"

29. When Plaintiff said that "those days are over," Kelly attempted to downplay the comment; however, Plaintiff felt embarrassed, humiliated, and discriminated against because of such an insensitive and racially offensive comment made by his boss.

30. At that point there was no one for the Plaintiff to complain to because he reported directly to Montalbano and Blake V

31. Ever since making his racially discriminatory attitude toward Plaintiff, Kelly and CWAFR targeted Plaintiff and discriminated against him based on his race to eventually terminate him for pretextual reasons.

**Business Card Design, Fire Referral Card, and Job Board Crash Incidents.**

32. On October 18, 2019, only two days after the Plaintiff received a supervisory note alleging Plaintiff of taking too long to complete projects and/or abandoning projects and stating that improving Plaintiff's performance is a condition to retain his employment.

33. At no point before that did Plaintiff receive a negative performance review or a comment indicating that CWAFR was not satisfied with Plaintiff.

34. The note referenced three incidents (Business Card Design, Fire Referral Card, and Job Board Crash) during which Plaintiff allegedly did not meet expectations of CWAFR.

35. CWAFR claimed that on October 11, 2019, Montalbano assigned Plaintiff a project to design a business card marketing tool; however, due to Plaintiff's alleged constant need of getting direction and instruction from Montalbano, Montalbano had to take the project back from Plaintiff.

5

36. However, the email correspondence between Plaintiff and Montalbano demonstrates that Plaintiff sent three drafts of the business card project to Montalbano, each time applying Montalbano's instructions regarding the visual aspects of the card.

37. Moreover, Montalbano himself admitted that the design was "moving in the right direction."

38. Thus, CWAFR's false claim regarding Plaintiff's constant need for direction and instruction demonstrates Defendants' discriminatory behavior toward Plaintiff and further suggests that Defendant CWAFR was motivated by discriminatory reasons when wrongfully terminating Plaintiff's employment.

39. Furthermore, CWAFR claimed that several days after assigning Plaintiff a Fire Referral Card, and Plaintiff's alleged need for direction and instruction, Montalbano had to take the project back from Plaintiff and re-design the card themselves.

40. CWAFR complained of Plaintiff's use of Microsoft Word to complete the project, which they deemed "an inadequate choice of software," and referenced Adobe Acrobat Photoshop as "the appropriate program for any type of designing."

41. In fact, Plaintiff has never attempted to use Microsoft Word for designing purposes to complete projects at work. Instead, he worked on the said project in Adobe Photoshop, but Kelly preferred to have it specifically in Microsoft Word.

42. Plaintiff avers that using Microsoft Word for designing purposes is more difficult; however, he complied with a direct instruction given to him by the owner of CWAFR, therefore, the allegations against him set forth in the supervisory note from October 18, 2019 are unsubstantiated and further indicate CWAFR's discriminatory attitude toward Plaintiff and suggest that termination of Plaintiff's employment was wrongful.

43. Lastly, CWAFR stated that on October 3, 2019, Job Board, a shared spreadsheet wherein CWAFR registers its incoming jobs, crashed, and that Plaintiff reported he could not fix the issue.

6

44. Moreover, CWFR claimed that Montalbano, "who does not have an IT background, was able to get the proper support from Google to fix it himself."

45. In fact, the said crash took place on October 4, 2019 and Plaintiff was the initiator of the solution to the problem.

46. Plaintiff contacted the Google Enterprise Technical Support and collaborated with Google Technician and was able not only to resolve the issue but also to stop it from recurring.

47. Immediately after resolving the issue, Plaintiff went to Kelly, Montalbano and Valderschmidt to report and explain what had transpired and what steps were taken.

48. Both Kelly and Montalbano praised Plaintiff.

49. Shortly after Plaintiff received the supervisory note alleging all of the above incidents, Plaintiff emailed CWAFR's manager, Trevor Madera, who signed the note, rebutting the allegations set forth in the note and providing evidence in his favor, however, he did not receive any answer.

50. CWFR entangled itself with unsubstantiated allegations against Plaintiff, trying to create a justifiable reason for his termination and thus, not only did they make a false statement in the supervisory note, but they also were not able to provide the correct date of occurrence of the issue.

51. Therefore, the supervisory note demonstrates Defendants' discriminatory attitudes toward Plaintiff and indicates that the reasons set forth in the separation letter sent to Plaintiff were pretextual.

**Sick Leave**

52. Several days that followed the racially discriminating comment made by Kelly toward Plaintiff, the supervisory note and unsubstantiated allegations against Plaintiff were emotionally and physically exhausting for Plaintiff.

7

53. On October 23, 2019, Plaintiff felt the need to spend some time at home, away from CWAFR and the discriminatory attitude of its management, therefore, at 5:33 am, he emailed Montalbano saying he would need a day out of office and is taking a sick day, which he had not taken before.

54. Montalbano responded to Plaintiff's email stating he would need to bring a doctor's note to justify his sick day.

55. To Plaintiff's knowledge, throughout his employment at CWAFR, there was no other employee who was required to provide CWAFR with a doctor's note after taking an accrued or "banked" sick day.

56. To Plaintiff's knowledge, fellow employees who were Caucasian were not asked for a doctor's note to excuse their sick day.

57. Moreover, immediately after, Montalbano issued a supervisory note to Plaintiff stating that Plaintiff received an "unexcused absence for not following company policy."

58. The above incident shows that Plaintiff was discriminated against based on his race, and that CWAFR and Montalbano deepened the discriminatory behavior against Plaintiff because of his race and after the October 16, 2019 incident involving Kelly.

**Termination**

59. On November 1, 2019, Plaintiff's job performance was assessed by John Montalbano, who indicated that Plaintiff meets the expectations of CWAFR in his role, "gets things up and running quickly and efficiently," "understands job functions," and works well with other employees.

60. Thus, it is evident that despite the unsubstantiated allegations made against Plaintiff in the supervisory note issued on October 18, 2019 and the sick leave incident Plaintiff met or exceeded CWAFR's expectations.

8

61. On October 24, 2019, Montalbano assigned Plaintiff a task to design a trifold pamphlet for CWAFR.

62. Plaintiff completed the project on October 25, 2019 and sent it to Montalbano, who responded to Plaintiff on November 5, 2019, asked him to revise the graphics and instructed to ask questions about content if something is visibly inaccurate.

63. Plaintiff inquired with Montalbano whether he had a distinct design in mind, to which Montalbano said he did not and explained that he is not a designer nor does he have any background in the field.

64. While Plaintiff was eager to complete the tasks and capable of doing what was necessary, he asked for direction in terms of desired visual aspects and expectations of Montalbano.

65. Despite the November 1, 2019 assessment and Plaintiff's compliance with instructions given by Montalbano, on November 6, 2019, Plaintiff received a separation of employment letter signed by Trevor Madera and Connie Perez.

66. The letter alleged that Plaintiff did not take the initiative to research and gather information on the project, sought too much support from his supervisor, expected the supervisor to proofread his work, and that Plaintiff's attitude stopped Montalbano from assigning Plaintiff tasks related to data filtering and data mining because of Montalbano's knowledge of Plaintiff's resistance "as he felt it was not part of his job."

67. Defendants unsubstantiated and false claims, openly or covertly racially discriminatory behavior, and contradictory assessments of Plaintiff indicate that reasons set forth in the termination letter were pretextual.

## COUNT I
### Discrimination in Violation of Title VII
### by CWAFR, Ryan Kelly, and John Montalbano

68. Plaintiff realleges and incorporates the above paragraphs as if fully set forth herein.

9

69. Plaintiff is a member of a protected class under Title VII – African American.

70. Defendants have violated Title VII by subjecting Plaintiff to discrimination based on his race, by, *inter alia*, making derogatory comments and terminating Plaintiff's employment with CWAFR.

71. As a direct and proximate result of Defendants' violation of the Title VII rights of Plaintiff, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

72. Defendant's unlawful discriminatory conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## COUNT II
### Wrongful Termination in Violation of Title VII by CWAFR

73. Plaintiff realleges and incorporates the above paragraphs as if fully set forth herein.

74. Defendants have violated Title VII by wrongfully terminating Plaintiff's employment because of his race.

75. As a direct and proximate result of Defendants' unlawful termination in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

76. As a direct and proximate result of Defendants' unlawful termination in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

77. Defendants' unlawful termination of Plaintiff's employment constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## COUNT III

### Retaliation in Violation of 42 USC § 1981 by CWAFR, Ryan Kelly and John Montalbano

78. Plaintiff realleges and incorporates the above paragraphs as if fully set forth herein.

79. Defendants have violated section 1981 by subjecting Plaintiff to retaliation for his protected activity complaints and opposition to Defendant's comments and actions on the basis of race and color by *inter alia* terminating Plaintiff's employment with the Defendant.

80. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of Section 1981, Plaintiff suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

81. As a direct and proximate result of Defendants' unlawful conduct in violation of Section 1981, Plaintiff has suffered severe mental anguish and emotional distress, including but not limited to humiliation, embarrassment stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

82. Defendants' unlawful retaliatory conduct constitutes a willful and wanton violation of Section 1981 was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages

11

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, John Roy prays that this Court enter judgment in his favor and against Defendants, and grant the following relief:

A.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States;

B.    An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.    An order directing Defendants to place Plaintiff in the position he would have occupied but for Defendants' discriminatory, and/or otherwise unlawful treatment of him, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Plaintiff;

D.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

E.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or economic damages, including, but not limited to, compensation for his emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

F.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputation and loss of career fulfillment;

G.    An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

H.    An award of punitive damages;

I.    An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

J.    Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

By: _____

_____
One of Plaintiff's Attorneys

Joshua N Karmel, Illinois Bar No. 6208369
The Law Offices of Joshua N. Karmel
5 Revere Dr., Ste 200
Northbrook, IL 60062
847-282-4942
Jklaw1226@gmail.com

Brad E Karlin, Illinois Bar No. 6307899
Of Counsel, The Law Offices of Joshua N. Karmel
5 Revere Dr., Ste 200
Northbrook, IL 60062
847-282-4942
bk.karlinlegal@gmail.com